FILED

2016 Jul-14  PM 02:33
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | |
|---|---|
| **BRANDI FREDERICK,** } | |
| } | |
| **Plaintiff,** } | |
| } | |
| **v.** } | **Case No.:  2:14-cv-01647-RDP** |
| } | |
| **SERVICE EXPERTS HEATING & AIR** } | |
| **CONDITIONING, LLC, et al.,** } | |
| } | |
| **Defendants.** } | |

## MEMORANDUM OPINION

### I.     Introduction

This case is before the court on Defendants Service Experts Heating & Air Conditioning,

LLC ("Service Experts")'s and Scott Freeman's Motion for Judgment on the Pleadings (Doc. #

42), filed February 10, 2016.  The Motion is fully briefed.  (Docs. # 42, 54, 55).  After careful

review, and for the following reasons, the court concludes that the Motion is due to be granted.

### II.    Procedural History

The court presumes the parties are familiar with the history of how this case has come

before it for the second time on removal, and will not repeat that history again here.   On

November 5, 2016, the court dismissed Defendant GE Capital ("GE") from this case with

prejudice.  (Docs. # 38, 39).  Plaintiff had only alleged claims against GE under the federal civil

Racketeer Influenced and Corrupt Organizations ("RICO") statute, 18 U.S.C. § 1964(c).  (*See*

Doc. # 1-8).  Subsequently, Service Experts and Freeman filed this Motion, arguing that the

RICO claims against Service Experts should be dismissed for the same reasons they were

dismissed against GE, and asserting that all claims against Freeman should be dismissed for

failure to state a claim.  (Doc. # 42).  Service Experts and Freeman thereafter filed an Amended Answer to accurately reflect information revealed during discovery.  (Doc. # 48).

### III.    Background Facts

In March 2007, Plaintiff purchased from Defendant Service Experts, through its employee Becky Collins,[1] a new Trane HVAC unit.  (Doc. # 1-8 at ¶¶ 8-9, 13).  Plaintiff also bought from Service Experts and Collins an extended manufacturer warranty for that unit—or so she thought.  (*Id.* at ¶¶ 10-21).  In June 2011, Plaintiff's HVAC unit began functioning poorly and she had it inspected.  (*Id.* at ¶¶ 27-28).  The inspector asserted that the warranty Plaintiff had purchased would cover the repairs.  (*Id.* at ¶ 29).  However, the inspector's office could not locate Plaintiff or her HVAC unit's serial number in the Trane database.  (*Id.* at ¶ 30).

On June 25, 2011, Plaintiff contacted Service Experts and spoke with Defendant Freeman, the Manager of Operations and Service at Service Experts's Birmingham office.  (Doc. # 1-8 at ¶ 31).  He informed Plaintiff that she had not purchased an extended warranty.  (*Id.*).  Rather, she had purchased from Service Experts and Collins an insurance policy through Defendant Equiguard, Inc.[2]  (*Id.* at ¶¶ 32-33).

Plaintiff filed this lawsuit alleging (on behalf of herself and, with respect to certain claims, a putative class of similarly situated individuals) that Service Experts and Freeman, with the assistance of other Defendants (that is, GE and Equiguard), among other things, committed fraudulent sales practices, breached various contracts, and engaged in racketeering.  (Doc. # 1-8).  Plaintiff alleges that Service Experts's role in the purported racketeering scheme to defraud involved sending, or causing GE to send, to Plaintiff and the purported class -- via the mail and

---

[1] Collins was initially a named Defendant in this case, but the claims against her have been dismissed.

[2] Plaintiff has not served Equiguard.  The parties have informed the court that it is likely no longer in existence following bankruptcy.  (*See* Doc. # 1-8 at ¶ 34; Doc. # 48 at ¶ 34).

e-mails -- fraudulent statements, invoices for installment payments on the HVAC unit and the warranty, and notices of those statements and invoices.  (*Id.*).  Plaintiff has averred Service Experts received payments, sent via a check in the mail or over its online payment website, for the warranty that she thought she purchased, and that Service Experts would use these moneys to finance the alleged scheme with the assistance of GE.[3]  (*Id.*).  Specifically, Plaintiff claims that, by its actions, Service Experts is liable under the civil RICO statute on the basis of predicate acts of mail and wire fraud in the form of fraudulent invoices.  (*Id.*).  Counts Ten through Twelve of the Amended Complaint allege, respectively, violations of 18 U.S.C. §§ 1692(a), 1692(c), and 1692(d), by GE, Service Experts, and Equiguard.  (*Id.*).

Concerning Freeman, only two paragraphs in the RICO and other class portions of the Amended Complaint mentioned him by name.  (*See* Doc. # 1-8 at ¶ 108, 111.  There were no specific allegations against him individually in any of the other seven counts.  (*See* Doc. # 1-8).  Although Plaintiff stated that "Service Experts, Freeman, Collins, and their Fictitious Defendant equivalents shall collectively be referred to as the 'Service Expert Defendants,'" (*id.* at ¶ 7), six of the seven individual state law causes of action referenced only Service Experts or Collins individually.  (*See* Doc. # 1-8).  Only Count III (Suppression) requested relief against "Defendants, jointly and severally."  (*See id.* at ¶ 53).

In its Motion for Judgment on the Pleadings, Service Experts seeks dismissal of counts ten through twelve as to itself, and Freeman seeks dismissal of all claims against him.  (*See* Doc. # 42).  Both Defendants assert that Plaintiff has failed to plausibly allege facts supporting the RICO claims, and likewise has insufficiently pleaded the predicate acts.  (*Id.*).  Additionally, they argue that the Amended Complaint does not assert any claims against Freeman due to the

---

[3] Service Experts denies that it has an online payment website.  (Doc. # 48 at ¶ 24).  The URL provided by Plaintiff in the Amended Complaint is www.geonlineservice.com.  (Doc. # 1-8 at ¶ 24).

dearth of factual allegations regarding him, and the lack of a request for any damages from him. (*Id.*).  Plaintiff argues that it has pleaded valid and specific RICO claims as to both Service Experts and Freeman (or, at least with regards to Section 1962(c) for Freeman).  (Doc. # 54). Alternatively, if the court determines Defendants' Motion is due to be granted, Plaintiff requests leave to file an amended complaint pursuant to Federal Rule of Civil Procedure 15 to address the "technicalities that are curable by amendment and not insurmountable obstacles to stating a RICO claim." (*Id.* at 22).  Concerning the request for leave to amend, Defendants contend that, because the court has entered a Scheduling Order in this case and the amendment deadline contained therein has passed, (1) the "good cause" standard of Rule 16(b) applies (Doc. # 55), and (2) Plaintiff has not shown good cause.  (*Id.*).  Therefore, they argue, leave to amend should be denied.  (*Id.*).

## IV.    Standard of Review

Federal Rule of Civil Procedure 12(c) provides that a party may move for judgment on the pleadings after the pleadings are closed, but early enough not to delay trial.  The standard is a familiar one.  "Judgment on the pleadings is appropriate where there are no material facts in dispute and the moving party is entitled to judgment as a matter of law." *Cannon v. City of West Palm Beach*, 250 F.3d 1299, 1301 (11th Cir. 2001) (citations omitted); *see Bank of New York Mellon v. Estrada*, No. 12-cv-5952, 2013 WL 3811999, at *1 (N.D. Ill. July 22, 2013) ("A Rule 12(c) motion for judgment on the pleadings is 'designed to provide a means of disposing of cases when the material facts are not in dispute and a judgment on the merits can be achieved by focusing on the content of the pleadings and any facts of which the court will take judicial notice.'" (citations omitted)).  The court must accept the facts alleged in the complaint as true and view them in the light most favorable to the nonmoving party. *Cannon*, 250 F.3d at 1301.

4

A Rule 12(c) motion for judgment on the pleadings is analyzed the same as a Rule 12(b)(6) motion to dismiss. *Pipes v. City of Falkville, Ala.*, No. 12-cv-2885, 2013 WL 3367105, at *1 (N.D. Ala. July 5, 2013) (adopting report and recommendation); *see also Losey v. Warden*, 521 Fed. Appx. 717, 719 (11th Cir. 2013) ("A motion to dismiss and a motion for judgment on the pleadings should not be granted unless 'the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" (citations omitted)). Accordingly, to survive a motion for judgment on the pleadings, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation and internal quotations omitted); *see also Losey*, 521 Fed. Appx. at 719 (applying plausibility standard articulated in *Iqbal* to Rule 12(c) motion).

A complaint states a plausible claim for relief "when [a] plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Although detailed facts are not needed, a plaintiff is obligated to provide as grounds for entitlement to relief more than mere labels and conclusions. *Id.* Formulaic recitations of the elements of a cause of action do not satisfy a plaintiff's burden. *Id.* "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 679. A plausible claim for relief requires "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence" to support the claim. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007).

Further, "[i]n the Eleventh Circuit, where substantive RICO violations are based upon fraud, the 'allegations must comply not only with the plausibility criteria articulated in *Twombly*

and *Iqbal* but also with Fed. R. Civ. P. 9(b)'s heightened pleading standard.'"[4]  *Adell v. Macon Cty. Greyhound Park, Inc.*, 785 F. Supp. 2d 1226, 1231 (M.D. Ala. 2011) (quoting *Am. Dental Assn. v. Cigna Corp.*, 605 F.3d 1283, 1291 (11th Cir. 2010)); *accord Liquidation Commn. of Banco Intercontinental, S.A. v. Renta*, 530 F.3d 1339, 1355 (11th Cir. 2008) ("When a RICO claim is based on predicate acts involving fraud, those predicate acts must be pleaded with particularity, in accordance with Fed. R. Civ. P. 9(b)."); *cf. Ambrosia Coal & Constr. Co. v. Pages Morales*, 482 F.3d 1309, 1316 (11th Cir. 2007) ("Civil RICO claims, which are essentially a certain breed of fraud claims, must be pled with an increased level of specificity."). Accordingly, pursuant to Rule 9(b), a plaintiff pursuing a RICO complaint must allege: "(1) the precise statements, documents, or misrepresentations made; (2) the time, place, and person responsible for the statement; (3) the content and manner in which these statements misled the Plaintiffs; and (4) what the defendants gained by the alleged fraud."  *Am. Dental*, 605 F.3d at 1291 (quoting *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1380-81 (11th Cir. 1997)).

## V.      Analysis

Defendants argue that Plaintiff's RICO claims should be dismissed as to Service Experts, and all of her claims must be dismissed as to Freeman.  Plaintiff disagrees and alternatively requests leave to further amend her Amended Complaint.  The court addresses each request in turn.

### A.      Plaintiff's RICO Claims are Due to be Dismissed as a Matter of Law

Plaintiff sought relief pursuant to the civil RICO statute.  18 U.S.C. § 1964(c).  Section 1964(c) provides in relevant part that "[a]ny person injured in his business or property by reason

---

[4] To the contrary, "RICO predicate acts not sounding in fraud need not necessarily be pleaded with the particularity required by Fed. R. Civ. P. 9(b)."  *Liquidation Commn. of Banco Intercontinental, S.A. v. Renta*, 530 F.3d 1339, 1355 (11th Cir. 2008).

of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee . . . ." 18 U.S.C. § 1964(c).   Specifically, Plaintiff alleges three separate RICO violations of Section 1962: 18 U.S.C. §§ 1962(a), (c), and (d).[5]

As a threshold matter, a successful RICO claim requires a plaintiff to establish the essential basics of a RICO enterprise as well as a "pattern of racketeering activity."  *Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1264 (11th Cir. 2004).  A RICO enterprise exists "where a group of persons associates, formally or informally, with the purpose of conducting illegal activity."  *Id.* (quoting *United States v. Hewes*, 729 F.2d 1302, 1311 (11th Cir. 1984)). "Racketeering activity" includes such predicate acts as mail and wire fraud.  18 U.S.C. § 1961(1)(B).  "A pattern is established by at least two acts of racketeering activity the last of which occurred within ten years . . . after the commission of a prior act of racketeering activity." *Lehman v. Lucom*, 727 F.3d 1326, 1330 (11th Cir. 2013) (quoting *McCaleb v. A.O. Smith Corp.*, 200 F.3d 747, 750 (11th Cir. 2000) (ellipsis in original)).  These predicate acts must be related to one another and demonstrate criminal conduct of a continuing nature.  *Jackson*, 372 F.3d at 1264.  Proximate causation is a RICO requirement.  *Holmes v. Sec. Investor Protection Corp.*, 503 U.S. 258, 268 (1992).

### 1.    Plaintiff Has Sufficiently Pled Predicate Acts of Mail and Wire Fraud by Service Experts

Plaintiff's civil RICO claims against Service Experts are based on predicate acts of mail and wire fraud.  Therefore, Plaintiff must have adequately pled (*i.e.*, in accordance with *Twombly* and *Iqbal*, and Rule 9(b)) a violation of the federal mail and wire fraud statutes for her RICO

---

[5] These individual provisions are set forth and analyzed in more detail below.

claims against Service Experts to survive the Motion to Dismiss. *See Ayres v. Gen. Motors Corp.*, 324 F.3d 514, 519 (11th Cir. 2000).

Mail and wire fraud claims are governed by the same elements. *United States v. Langford*, 647 F.3d 1309, 1320 (11th Cir. 2011); *see also* 18 U.S.C. §§ 1341, 1343. "Both offences require that a person (1) intentionally participates in a scheme to defraud another of money or property and (2) uses or 'causes' the use of the mails or wires for the purpose of executing the scheme or artifice." *United States v. Ward*, 486 F.3d 1212, 1222 (11th Cir. 2007) (citations omitted). A person "causes" the mails or wires to be used within the meaning of the statutes "when he acts 'with knowledge that the use of the mails [or wires] will follow in the ordinary course of business, or where such use can reasonably be foreseen, even though not actually intended.'" *Id.* (quoting *Pereira v. United States*, 347 U.S. 1, 8-9 (1954)); *see also Unites States v. Bright*, 588 F.2d 504, 509 (5th Cir. 1979)[6] ("[I]t is not necessary that a defendant actually do any of the mailing so long as there is sufficient evidence to tie him to the fraudulent scheme which involves the use of the mails."). The offenses' gravamen "is the scheme to defraud, and any 'mailing [or wiring] that is incident to an essential part of the scheme satisfies the mailing [or wiring] element,' . . ., even if the mailing [or wiring] itself 'contains no false information.'" *Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 647 (2008) (quoting *Schmuck v. United States*, 489 U.S. 705, 712, 715 (1989) (internal citation omitted)). "A scheme to defraud requires proof of material misrepresentations, or the omission or concealment of material facts, reasonably calculated to deceive persons of ordinary prudence." *United States v.*

---

[6] In *Bonner v. City of Prichard, Ala.*, 661 F.2d 12065, 1209 (11th Cir. 1981) (*en banc*), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

*Hasson*, 333 F.3d 1264, 1270-71 (11th Cir. 2003) (internal citations omitted).   Justifiable reliance is not an element of mail or wire fraud.  *Bridge*, 553 U.S. at 648-49.

Plaintiff contended that Service Experts used both the U.S. mails and electronic wires (*i.e.*, e-mails and telephones) when it sent and caused GE to send to Plaintiff fraudulent statements and invoices for her installment payments for the HVAC system and warranty.  (Doc. # 1-8).  And, she has alleged that Service Experts received payments via the U.S. mails and wires.[7]  (*Id.*).  Further, she asserts that Service Experts communicated with Equiguard via mail and the wires to carry out their fraudulent scheme.   (*Id.*).  Clearly, Plaintiff has sufficiently pled -- with both plausibility and particularity -- the element of mailing or wiring that is required to show mail or wire fraud.

But that is not Plaintiff's only pleading obligation.   Under Federal Rule of Civil Procedure 9(b), a party "must state with particularity the [other] circumstances constituting fraud."  Fed. R. Civ. P. 9(b).  (In addition, the allegations must plausibly allege facts that satisfy *Twombly*'s and *Iqbal*'s requirements).  The rule of particularity "serves an important purpose in fraud actions by alerting defendants to the precise misconduct with which they are charged." *Durham v. Bus. Mgmt. Assocs.*, 847 F.2d 1505, 1511 (11th Cir. 1988) (citations and internal quotations removed).  Here, the court need not analyze in detail whether Plaintiff satisfied Rule 9(b) in this regard.   This is the case because Plaintiff pled her allegations with sufficient particularity to alert Service Experts of the precise misconduct with which it is charged—mail and wire fraud.

---

[7] In its Amended Answer, Service Experts denied having an online payment system.  (Doc. # 48 at ¶ 24). However, Plaintiff's allegations suggest that she sent (and Service Experts received) payments via the wires and U.S. mails.  (*See* Doc. # 1-8).  In a motion for judgment on the pleadings, disputes of fact are resolved in the light most favorable to the non-moving party—here, Plaintiff.  *See Cannon*, 250 F.3d at 1301.

Nevertheless, pleading a claim with particularity is not the same as pleading a plausible claim. *See Iqbal*, 556 U.S. at 686-87 (stating that Rule 9 does not give a plaintiff the "license to evade the less rigid—though still operative—strictures of Rule 8"). Plaintiff must also satisfy the plausibility requirement recognized in *Twombly* and *Iqbal*. Here, the Amended Complaint does so. In summary, Plaintiff has alleged that Service Experts, through Collins, (1) fraudulently induced her to purchase an Equiguard policy which she thought was a Trane extended warranty, and (2) then, using the U.S. mails and wire services, sent her (or caused GE to send her) monthly invoices, which Plaintiff paid and sent back to GE, who in turn sent those payments to Service Experts.[8] (Doc. # 1-8). These monthly invoices were purportedly paid for nearly four years. (*See id.*). To violate the mail or wire fraud statutes, "it is not necessary that the transmitted information include any misrepresentation." *Hasson*, 333 F.3d at 1272 (citing *Schmuck*, 489 U.S. at 715). An interstate mail or wire transmission "is 'for the purpose of executing' the scheme to defraud if it is 'incident to an essential part of the scheme' or 'a step in the plot.'" *Id.* at 1273 (quoting *Schmuck*, 489 U.S. at 710-11). The transmission of both monthly invoices and payment of those invoices is "incident to an essential part of the scheme" to defraud Plaintiff (and, she contended, other customers). *Id.* And, it is reasonably foreseeable that in the years encompassing 2007-2011 a financing agent who handles customer transactions would utilize the mails and wires for those transactions. Accordingly, the court concludes that Plaintiff has

---

[8] Service Experts argues that because the court found that Plaintiff's claims were not plausible as to GE, it follows that those allegations are not plausible as to it. (*See* Doc. # 42). But that argument is misplaced. GE and Service Experts are separate entities. Plaintiff alleged that GE was nothing more than a financing agent for Service Experts (Doc. # 1-8), and that Service Experts, through its employee Collins, purposefully committed a fraud and used or caused the use of mails and wires in furtherance thereof. (*See id.*).

pleaded plausible predicate acts, with sufficient particularity, of mail and wire fraud committed

by Service Experts.[9]

### 2.      Plaintiff Has Not Sufficiently Pled Her RICO Claims

Plaintiff alleged violations of three provisions of the RICO statute: 18 U.S.C. §§ 1962(a),

1962(c), and 1962(d).  The court addresses each in turn.

### a.      Plaintiff Has Not Pled a Plausible Claim under Section 1962(a)

Section 1962(a) provides in pertinent part that:

---

[9] However, although the court is not presently issuing a ruling on the matter, it is readily apparent that Plaintiff has not plausibly pleaded the predicate acts necessary to maintain a mail and/or wire fraud by Equiguard. Equiguard has not appeared in this case and challenged Plaintiff's claims against it, and the parties have informed the court that it is no longer in existence and cannot file a response.  But its lack of existence does not preclude the court from observing that Plaintiff's claims against it are not plausible.  Indeed – and to be sure, Plaintiff has not yet moved for entry of default against Equiguard – there is a substantial question as to whether the court would be able to enter a default judgment.  That is, there is a substantial question whether Plaintiff has pleaded plausible claims against Equiguard.  *See Surtain v. Hamlin Terrace Found.*, 789 F.3d 1239, 1245 (11th Cir. 2015) ("Entry of default judgment is only warranted when there is 'a sufficient basis in the pleadings for the judgment entered.'" (citation omitted)); *see also Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1370 n. 41 (11th Cir. 1997) ("[A] default judgment cannot stand on a complaint that fails to state a claim.").

Plaintiff offered no plausible allegations that allow for an inference that Equiguard purposefully participated in any scheme to defraud Plaintiff (and other customers of Service Experts).  Her averments indicated that Service Experts, through Collins, misled her and sold her an Equiguard policy instead of a Trane warranty. (Doc. # 1-8).  But, there were no plausible facts alleged that indicate Equiguard had any purposeful involvement in (or knowledge of) Collins's and Service Experts's fraud.  Plaintiff only made conclusory allegations in this regard, and such statements do not abide in this court.  *See Iqbal*, 556 U.S. at 679.  Based on the facts as currently pled, although Equiguard contracted with Service Experts to provide its policy, there is not a basis for a claim that Equiguard had knowledge of any purported schemes to defraud.  *See Am. Dental*, 605 F.3d at 1290 (quoting *Iqbal*, 556 U.S. at 682) (the "court[] may infer from the factual allegations in the complaint 'obvious alternative explanation[s],' which suggest lawful conduct rather than the unlawful conduct the plaintiff would ask the court to infer").  Similarly, and clearly, Equiguard never communicated with Plaintiff and thus could not have made material misrepresentations or omissions that induced her into acting and purchasing the Equiguard policy—Plaintiff had never even heard of Equiguard until June 2011.  (Doc. # 1-8 at ¶ 32).  And, based on her pleaded facts, it is not reasonably foreseeable *as to Equiguard* that "Service Experts and Equiguard used the mail and wire to communicate with each other regarding Service Experts' purchase of the counterfeit 'warranties'/insurance from Equiguard and claims made and processed under those 'warranties.'"  (Doc. # 1-8 at ¶ 109).  Such an allegation might implicate Service Experts, but there are no facts concerning Equiguard's purported role in the alleged scheme.  Plaintiff needed to show more to "nudge[] the[] claims across the line from conceivable to plausible."  *Twombly*, 550 U.S. at 570.

Moreover, Plaintiff's mail and wire fraud pleadings against Equiguard do not appear to satisfy Rule 9(b).  She set forth no facts concerning how and when it used the mails or wires to conduct the purported scheme to defraud.  Thus, the Amended Complaint does not adequately demonstrate the predicate acts of mail and/or wire fraud by Equiguard.

> [i]t shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity or through collection of an unlawful debt in which such person has participated as a principal within the meaning of section 2, title 18, United States Code, to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.

18 U.S.C. § 1962(a).  While the Eleventh Circuit has not pronounced a rule as to § 1962(a), it is clear that "the essence of a violation of § 1962(a) is not commission of predicate acts but investment of racketeering income."  *Gristede's Foods, Inc. v. Unkechauge Nation*, 532 F. Supp. 2d 439, 446 (E.D.N.Y. 2007) (quoting *Ouaknine v. MacFarlane*, 897 F.2d 75, 83 (2d Cir. 1990)); *see also Lockheed Martin Corp. v. Boeing Co.*, 357 F. Supp. 2d 1350, 1369 (M.D. Fla. 2005) ("a majority of courts that have addressed the issue have determined that a claimant under § 1962(a) must plead an injury which stems 'not from the racketeering predicate acts themselves' but from the 'use or investment of . . . racketeering income.'") (collecting cases).  Thus, the use or investment of racketeering income must proximately cause harm to the RICO victim.  *See Boeing*, 357 F. Supp. 2d at 1369; *see also Nolen v. Nucentrix Broadband Networks Inc.*, 293 F.3d 926, 929 (5th Cir. 2002) ("any injury must flow from the *use or investment of racketeering income*" (emphasis in original) (quotation omitted)); *Parker & Parsley Petroleum Co. v. Dresser Indus.*, 972 F.2d 580, 584 (5th Cir. 1992) (holding that there must be a nexus between the claimed violation and the injury).

Plaintiff averred in paragraph 145 of her Amended Complaint that "Service Experts received income derived, directly or indirectly, from a pattern of mail and wire fraud, described above and, participating as a principle, used or invested, directly or indirectly, part of such income, or the proceeds of such income, in the establishment or operation of the enterprise." (Doc. # 1-8 at ¶ 145).  A § 1962(a) enterprise is "something acquired through the use of illegal

activities or by money obtained from illegal activities." *N.O.W. v. Scheidler*, 510 U.S. 249, 259 (1994). In other words, a § 1962(a) enterprise is "'the victim of unlawful activity,' not the vehicle through which that activity is committed." *Boeing*, 357 F. Supp. 2d at 1368 (quoting *Scheidler*, 510 U.S. at 259). "Obviously, [Service Experts] is not a victim, nor can it acquire itself." *In re Managed Care Litig.*, 150 F. Supp. 2d 1330, 1352 (S.D. Fla. 2001). Accordingly, applying the definition of a § 1962(a) enterprise here, Plaintiff's claim fails.

Alternatively, and in any event, Plaintiff has not plausibly alleged any facts in support of the "but-for" and proximate causation requirements under § 1962(a). *See Cox v. Admr. U.S. Steel & Carnegie¸* 17 F.3d 1386, 1399 (11th Cir. 1994) ("It is well-established that RICO plaintiffs must prove proximate causation in order to recover."), *opinion modified on rehearing on other grounds*, 30 F.3d 1347 (*per curiam*). "[I]t is the use or investment of racketeering income, not racketeering acts, which violates § 1962(a)." *Boeing*, 357 F. Supp. 2d at 1370. Plaintiff has not pleaded facts showing how the use or investment of income derived from the purported mail and wire fraud caused her harm. Instead, her allegations suggest that Service Experts naturally invested corporate profits (even if some of those profits derived from alleged fraud), which is not a plausible indication of a violation of § 1962(a). *See Brittingham v. Mobil Corp.*, 943 F.2d 197, 305 (3d Cir. 1991) ("The direct cause of plaintiffs' alleged injuries was the fraudulent conduct. Plaintiffs have neither alleged nor demonstrated a connection with the use or investment of racketeering income other than the normal reinvestment of corporate profits."). Thus, Plaintiff's § 1962(a) claim fails because she has not properly alleged an investment injury.

> **b.     Plaintiff Has Not Sufficiently Pled a Plausible Claim under Section 1962(c)**

Title 18 U.S.C. § 1962(c) states that it is "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign

commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affair through a pattern of racketeering activity or collection of unlawful debt." To state a claim for relief under § 1962(c), a plaintiff must satisfy four elements: (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity. *Williams v. Mohawk Indus., Inc.*, 465 F.3d 1277, 1282 (11th Cir. 2006) (*per curiam*). Further, "to establish liability under § 1962(c) one must allege and prove the existence of two distinct entities: (1) a 'person;' and (2) and 'enterprise' that is not simply the same 'person' referred to by a different name." *Cedric Kushner Promotions, Ltd. v. Kind*, 533 U.S. 158, 161 (2001). A RICO "enterprise" is defined to include "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4).

An association-in-fact enterprise "can exist in the absence of a formally structured group.'" *Boeing*, 357 F. Supp. 2d at 1360 (quoting *United States v. Young*, 906 F.2d 615, 619 (11th Cir. 1990)). However, not all associations-in-fact are RICO enterprises. Instead, "[t]he critical determination in evaluating whether 'an association of individual entities' constitutes 'a RICO enterprise' is whether 'the association of individual entities, however loose or informal, furnished a vehicle for the commission of two or more predicate crimes.'" *Id.* (quoting *United States v. Goldin Indus., Inc.*, 219 F.3d 1271, 1275 (11th Cir. 2000)) ("*Goldin II*") (internal changes omitted). In other words, they must be "associated together for the common purpose of engaging in a course of conduct." *United States v. Turkette*, 452 U.S. 576, 583 (1981). Furthermore, an individual entity "must participate in the operation or management of the enterprise itself." *Reves v. Ernst & Young*, 507 U.S. 170, 185 (1993).

Plaintiff alleged four different enterprises: (1) Service Experts alone; (2) Service Experts and Equiguard as an association-in-fact; (3) Service Experts and GE as an association-in-fact;

and (4) Service Experts, Equiguard, and GE as an association-in-fact.  (Doc. # 1-8 at ¶¶ 98-101).
The court addresses each in turn.

### 1)  Service Experts Cannot be an Enterprise on its Own

Service Experts cannot itself be both the RICO person and the RICO enterprise.  *See
Cedric Kushner*, 533 U.S. at 161.  "The distinction between the RICO person and the RICO
enterprise is necessary because the enterprise itself can be a passive instrument or victim of the
racketeering activity."  *United States v. Goldin Indus., Inc.*, 219 F.3d 1268, 1270 (11th Cir. 2000)
(*en banc*) ("*Goldin I*").  Indeed, "Congress' intention in § 1962(c) [was] to target a specific
variety of criminal activity, 'the exploitation and appropriation of legitimate businesses by
corrupt individuals.'"  *Id.* (quoting *Yellow Bus Lines, Inc. v. Drivers, Chauffeurs & Helpers
Local Union 639*, 883 F.2d 132 (D.C. Cir. 1989), *rev'd in part on other grounds*, 913 F.2d 948
(D.C. Cir. 1990) (*en banc*) (citing in turn S. Rep. No. 617, 91st Cong., 1st Sess. 76-78 (1969),
U.S. Code Cong. & Admin. News 1970, p. 4007); *see also B.F. Hirsch v. Enright Refining Co.,
Inc.*, 721 F.2d 628, 633 (3d Cir. 1984) ("the 'person' subject to liability cannot be the same entity
as the 'enterprise.'"), *abrogated in part on other grounds by Sedima v. Imrex Co.*, 473 U.S. 479
(1985).  "[T]he person and the victim, or the person and the tool, are different entities, not the
same."  *Cedric Kushner*, 533 U.S. at 162.

In her opposition brief, Plaintiff argues that "Scott Freeman is the separate and distinct
defendant 'person' as to the Service Experts enterprise."  (Doc. # 54 at 8).  Her argument misses
the mark by a wide margin.  Plaintiff has not pleaded in the Amended Complaint that Freeman or
Collins is a RICO defendant, outside of two conclusory allegations that they were involved in the
purported scheme to defraud.  (*See* Doc. # 1-8 at ¶¶ 108, 111).  Nor did the three RICO counts
ask for relief from Freeman or Collins—they only requested relief from Service Experts,

Equiguard, and GE.  (*See id.* at ¶¶ 144-161).  Accordingly, the Amended Complaint has not plausibly alleged that Freeman or Collins is a RICO "person."  "[W]hat is not in the complaint cannot be added in a brief."  *Adell*, 785 F. Supp. 2d at 1241 (citing *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2005)).

Under Plaintiff's well-pleaded facts (taken as true), Service Experts is the only RICO person.  But, § 1962(c) "liability 'depends on showing that the defendants conducted or participated in the conduct of the '*enterprise's* affairs,' not just their *own* affairs."  *Cedric Kushner*, 533 U.S. at 163 (quoting *Reves*, 507 U.S. at 185) (emphasis in original); *see also Goldin II*, 219 F.3d at 1276 ("RICO forbids the imposition of liability where the enterprise is nothing more than a subdivision or a part of the person. . . .").  Therefore, Plaintiff's § 1962(c) claim cannot stand on the basis of Service Experts alone being the RICO enterprise.

### 2) Plaintiff Has Not Plausibly Pled that Service Experts and Equiguard are an Association-in-Fact Enterprise

Plaintiff alternatively pleaded that Service Experts and Equiguard are an association-in-fact enterprise.  The court disagrees.

It is axiomatic that multiple corporations can form a RICO enterprise.  *See Goldin II*, 219 F.3d at 1277.  "The critical determination in evaluating whether 'an association of individual entities' constitutes 'a RICO enterprise' is whether 'the association of individual entities, however loose or informal, furnished a vehicle for the commission of two or more predicate crimes.'"  *Boeing*, 357 F. Supp. 2d at 1360 (quoting *Goldin II*, 219 F.3d at 1275); *see also Turkette*, 452 U.S. at 583 (entities must be "associated together for the common purpose of engaging in a course of conduct").  Here, however, Plaintiff has not plausibly averred any facts

demonstrating how Equiguard contributed to the commission of two or more instances of mail or wire fraud.[10]  Indeed,

> Plaintiff[] do[es] not allege how [Equiguard] agreed to employ any of these procedures as part of a long-term criminal enterprise predicated on acts of mail and wire fraud.   Simply specifying . . . contents of communications cannot automatically constitute a valid claim that a defendant violated 18 U.S.C. § 1962(c) without also plausibly alleging the existence of a long-term criminal enterprise.

*Am. Dental*, 605 F.3d at 1292-93.  There are simply no plausible facts alleged that indicate Equiguard had any knowledge of, much less purposeful involvement in, Service Experts's purported fraud.  Plaintiff only made conclusory allegations in this regard, and the court disregards them.  *See Iqbal*, 556 U.S. at 679.  The Amended Complaint shows only that Service Experts may have been a vehicle on its own for the commission of two or more predicate crimes—but not Equiguard.

Notwithstanding the foregoing, there is yet another reason Plaintiff has not sufficiently pleaded that Equiguard and Service Experts are an association-in-fact enterprise.  "The crucial factor is whether each entity alleged to be part of the association-in-fact 'is free to act independently and advance its own interests contrary to those' of the other entities" in conducting the RICO scheme.  *Boeing*, 357 F. Supp. 2d at 1365 (quoting *Goldin II*, 219 F.3d at 1277).  In other words, both Service Experts *and* Equiguard "'must have some part in directing' the affairs of the enterprise."  *Williams*, 465 F.3d at 1285 (quoting *Reves*, 507 U.S. at 179).  There are no facts alleged which demonstrate how Equiguard had any part in directing any affairs of the alleged enterprise.  The only facts are that Service Experts sold Equiguard policies, and Plaintiff instead purchased what she thought was a Trane HVAC extended warranty.  (*See* Doc. # 1-8).  To demonstrate that Equiguard was part of an association-in-fact enterprise,

---

[10] Further, the court doubts that Plaintiff has adequately pled predicate acts of mail and wire fraud by Equiguard.  *See* note 9, *supra*.

Plaintiff would have to allege facts allowing for a reasonable inference that Equiguard exercised some measure of control over Service Experts. She has not averred any plausible facts in that regard. Accordingly, Plaintiff has not pleaded an association-in-fact RICO enterprise consisting of Equiguard and Service Experts.[11]

### 3) Neither Service Experts and GE, Nor Service Experts, Equiguard, and GE are Association-in-Fact Enterprises

Plaintiff has attempted to plead two other alternative association-in-fact RICO enterprises: one consisting of Service Experts and GE, and another consisting of Service Experts, GE, and Equiguard. Both attempts miss the mark. As the court has previously determined, Plaintiff has not plausibly alleged any facts showing that GE is liable as a member of the purported RICO enterprise. (*See* Doc. # 38). Without GE, the only remaining potential enterprises would be Equiguard and/or Service Experts. But, for the reasons noted above, Plaintiff has not plausibly alleged a RICO enterprise consisting of Service Experts and Equiguard. Taken as true, Plaintiff's well-pleaded facts suggest only that Service Experts alone is both the RICO person and the RICO enterprise. But, as a matter of law, Service Experts cannot be both the RICO person and the RICO enterprise. Accordingly, Plaintiff has not pleaded a claim under Section 1962(c), and that cause of action is due to be dismissed with prejudice.

### c.    Plaintiff Has Not Plausibly Alleged a Claim under Section 1962(d)

Pursuant to 18 U.S.C. § 1962(d), "[i]t shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section." Because Plaintiff has

---

[11] Moreover, and in any event, in an illicit association-in-fact enterprise, a RICO person must be distinct from the RICO enterprise (even though a RICO person can certainly be a part of the RICO enterprise so long as the enterprise is more than just that person). *Goldin I*, 219 F.3d at 1270; *Goldin II*, 219 F.3d at 1275. This is "because the enterprise itself can be a passive instrument or victim of the racketeering activity." *Goldin I*, 219 F.3d at 1270. Plaintiff has not plausibly asserted that Equiguard is a RICO person distinct from the alleged enterprise. At best, she has pleaded that Equiguard is a victim of the racketeering activity, with Service Experts misleading its customers into buying Equiguard policies instead of Trane HVAC warranties. But, the court doubts that Service Expert's allegedly misleading utilization of the Equiguard policies is truly a victimization of Equiguard. Thus, taken as true, Plaintiff's well-pleaded facts suggest that Service Experts alone is both the RICO person and the RICO enterprise.

failed to state a claim for relief under 18 U.S.C. §§ 1962(a) or 1962(c), she cannot support a cause of action pursuant to § 1962(d).

Nevertheless, even if Plaintiff successfully pleaded a cause of action under §§ 1962(a) or 1962(c), she still has not alleged a claim under § 1962(d).  Plaintiff has failed to aver plausible facts demonstrating an illicit agreement to defraud her was made between Service Experts and the other RICO Defendants.  It is true that a "defendant's participation in a conspiracy may be inferred from acts of his which furthered the objectives of the conspiracy."  *United States v. Kopituk*, 690 F.2d 1289, 1323 (11th Cir. 1982) (citations and internal quotations omitted). Nevertheless, a RICO plaintiff must still allege an agreement, including "knowledge of the essential nature of the plan," to demonstrate the plausible existence of a conspiracy.  *Id.*; *see also Twombly*, 550 U.S. at 557 ("without some further factual enhancement [an allegation of conspiracy] stops short of the line between possibility and plausibility of entitlement to relief") (internal changes and citations omitted).  Conclusory allegations, "accompanied by nothing more than a bare assertion of a conspiracy, do not plausibly suggest a conspiracy."  *Am. Dental*, 605 F.3d at 1294.  "[W]ithout that further circumstance pointing to a meeting of the minds, an account of a defendant's commercial efforts stays in neutral territory."  *Twombly*, 550 U.S. at 557.

Here, Plaintiff has "merely alleged," as part of her RICO claims, that Service Experts and the other RICO Defendants conducted their relationship in a manner that defrauded Plaintiff. *Club Car, Inc. v. Club Car (Quebec) Import, Inc.*, 276 F. Supp. 2d 1276, 1284 (S.D. Ga. 2003). But such an allegation falls short of identifying any agreement Service Experts made with GE or Equiguard to engage in RICO-prohibited behavior.[12]  She has only made conclusory statements

---

[12] Plaintiff argues in its Response that "[a] defendant's participation in a [RICO] conspiracy may be inferred from acts of his which furthered the objectives of the conspiracy."  (Doc. # 54 at 20 (quoting *Kopituk*, 690

and assumptions "couched as [] factual allegation[s]." *Iqbal*, 556 U.S. at 678. Plaintiff has simply not alleged facts to show a valid RICO violation. Accordingly, this claim is due to be dismissed.

### B.      Defendant Scott Freeman is Due to be Dismissed from this Case

Plaintiff named Freeman as a Defendant in her Amended Complaint. (Doc. # 1-8). However, Freeman's name was only specifically mentioned in three paragraphs of the general "Facts" section, and two paragraphs of the "Additional RICO Facts" section. (Doc. # 1-8 at ¶¶ 31-33, 108, 111). He was not named individually in any of the twelve counts. (*See* Doc. # 1-8). And only Count III (Suppression) prayed for relief from "Defendants, jointly and severally."[13] (*Id.* at ¶¶ 49-53). Defendants contend that, largely on the basis that no claims are alleged against him, Freeman should be dismissed from this case entirely. (Docs. # 42, 55). They further argue that the factual allegations set forth in the Amended Complaint undermine any claim of suppression against Freeman. (*Id.*). The court agrees.

To demonstrate a claim of suppression (otherwise and perhaps more commonly known as fraudulent suppression) a plaintiff must show (1) that a defendant had a duty to disclose an existing material fact; (2) that the defendant concealed or suppressed that material fact; (3) that the defendant's suppression induced the plaintiff to act or refrain from acting; and (4) that the plaintiff suffered actual damage as a proximate result. *Crestview Meml. Funeral Home, Inc. v. Gilmer*, 79 So.3d 585, 590 (Ala. 2011) (citation omitted); *see also* Ala. Code § 6-5-102

---

F.2d at 1323)). However, Plaintiff has not plausibly alleged acts of Defendants other than Service Experts that furthered the objectives of the purported conspiracy. Furthermore, Plaintiff's argument ignores important language from *Kopituk* in the paragraph preceding the selected quotation: "it is sufficient to show that [a defendant] had knowledge of the 'essential nature of the plan.'" *Kopituk*, 690 F.2d at 1323 (quotation omitted). Plaintiff has not shown that Equiguard (or GE) had any knowledge of Service Expert's alleged scheme to defraud.

[13] In her response Plaintiff appears to agree that the suppression claim is the only state law claim alleged against Freeman. (Doc. # 54). Further, the remaining non-RICO and non-class causes of action request relief from Service Experts and Collins. (Doc. # 1-8). Accordingly, the court does not consider them to be claims against Freeman and need not address them.

(codifying the tort of fraudulent suppression).  "A party's mere silence as to a material fact does not constitute fraud unless that party is under a duty to disclose that fact.  A duty to disclose can arise either from a confidential relationship with the plaintiff or from the particular circumstances of the case."  *Id.* (quoting *Keck v. Dryvit Sys., Inc.*, 830 So.2d 1, 11 (Ala. 2002)).  The existence of a duty to disclose is a question of law.  *State Farm Fire & Cas. Co. v. Owen*, 792 So.2d 834, 839 (Ala. 1998).  "When the parties to a transaction deal with each other at arm's length, with no confidential relationship, no obligation to disclose information arises when the information is not requested."  *Mason v. Chrysler Corp.*, 653 So.2d 951, 954-55 (Ala. 1995) (citations omitted).  Further, a party "can be liable for suppression only if it had knowledge of the material fact it allegedly suppressed."  *Owen*, 792 So.2d at 837 (citing *Dodd v. Nelda Stephenson Chevrolet, Inc.*, 626 So.2d 1288, 1293 (Ala. 1993)).

Here, Plaintiff has not identified facts giving rise to any duty on Freeman's part to disclose.  Although Plaintiff has generally alleged that because "Defendants" had "superior knowledge," and that, "by virtue of other special circumstances in this case," had a duty to disclose material facts (Doc. # 1-8 at ¶ 50), there are no facts alleged in this case which give rise to a confidential relationship.  Nor has Plaintiff alleged what facts create the "other special circumstances in this case."  (*Id.*).  To be sure, Plaintiff has averred that she asked *Collins* in 2007 about the optional extended warranties, and she has alleged *Collins* "explicitly represented" that Plaintiff was purchasing the extended warranties she desired.  (*Id.* at ¶¶ 11-14).  On those facts, Plaintiff may have stated a claim for suppression against Collins and, jointly and severally, her employer Service Experts.  But, based on Plaintiff's own pleadings, Freeman did not enter the picture until June 25, 2011, when Plaintiff called Service Experts.  (*Id.* at ¶¶ 31-33).  Furthermore, Plaintiff's allegations demonstrate that it was Freeman who *revealed* to Plaintiff

that she had purchased an Equiguard policy—not the warranty she thought she had purchased in 2007. (*Id.*). There are no facts demonstrating that Freeman had a prior duty to disclose. And, in any event, when presented with the opportunity to do so, he actually disclosed the material facts at issue. Likewise, and notwithstanding Plaintiff's argument in her opposition brief that Freeman's "known role at this point relates" to the time "*prior* to being contacted by Plaintiff," she has not averred that Freeman was aware (or had knowledge) of Collins's representations to her when she purchased the HVAC and the Equiguard policy. (Doc. # 54 at 20-21) (emphasis in original). Plaintiff has not plausibly stated a claim of suppression against Freeman.

Plaintiff also argues in her opposition brief that she has stated a claim against Freeman for certain RICO causes of action. (Doc. # 54). This argument, according to Plaintiff, is bolstered by the statements that "Service Experts, Equiguard, GE and Freeman used the mail and wire to execute the enterprise's fraudulent scheme," and that "Defendants Freeman and Collins also participated in this fraudulent scheme and Freeman participated in the management of it." (Doc. # 1-8 at ¶¶ 108, 111). First, as discussed above, she has not adequately pled her RICO claims. Second, these two quoted statements are conclusory and "couched as [] factual allegation[s]." *Iqbal*, 556 U.S. at 678. Indeed, there are no factual averments concerning Freeman's fraudulent use of the mails or wires, or participation in or direction of the purported RICO enterprise. Instead, the facts in the Amended Complaint show that Freeman used the wires on June 25, 2011, when he revealed to Plaintiff via telephone the truth concerning the policy she purchased. And, finally, the RICO allegations referred to Service Experts, Equiguard, and GE as the purported "enterprise." (*See* Doc. # 1-8). Furthermore, only Service Experts and GE were more specifically alleged to have conducted mail and wire fraud. (*See id.*). Similarly, the prayer for relief in each RICO count has sought judgment from "Service Experts, Equiguard

and GE, separately and severally" (*id.* at ¶¶ 149, 155, 161); Freeman was not named. Accordingly, the court concludes that Plaintiff has not stated any RICO claims against him, and all of her claims as to Freeman are due to be dismissed.

### C.    Plaintiff is Not Entitled to Leave to Further Amend Her Amended Complaint

In her opposition brief, Plaintiff alternatively requests, pursuant to Rule 15(b), that the court grant her leave to allow her to file another amended complaint. (Doc. # 54). Defendants contend that leave should be denied because Plaintiff has not satisfied Rule 16(b)'s "good cause" requirement. (Doc. # 55). The court agrees with Defendants.

Plaintiff has already amended her complaint once and, further, the timeframes provided for under Federal Rule of Civil Procedure 15(a)(1) have long passed. Accordingly, under Rule 15(a)(2), "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). Rule 16(b) provides, however, that once a scheduling order has been entered in a case, "[a] schedule may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). On November 13, 2015, the court entered the Class Certification Scheduling Order in this case (Doc. # 41), which set a deadline of January 29, 2016, for Plaintiff to amend the pleadings. (*Id.* at ¶ 8). Plaintiff's opposition brief, which contained her alternative request for leave to amend, was filed on March 9, 2016. Therefore, because that request "comes long after the deadlines for filing motions to amend established in the scheduling order[] entered in this case," Plaintiff is "required to show good cause under Federal Rule of Civil Procedure 16(b)." *Mann v. Taser Intl., Inc.*, 588 F.3d 1291, 1312 (11th Cir. 2009); *see also Dozier v. Rowan Drilling Co., Inc.*, 397 F. Supp. 2d 837, 855 (S.D. Tex. 2005) ("Only upon the movant's demonstration of good cause to modify the scheduling order will the more liberal standard of

Rule 15(a) apply to the district court's decision to grant or deny leave." (Quoting *S & W Enters., L.L.C. v. SouthTrust Bank of Ala.*, 315 F.3d 533, 536 (5th Cir. 2003))).

This is not a situation in which Plaintiff has timely moved to amend her Complaint. Indeed, "[P]laintiff [has] had ample time to file a motion for leave to amend but failed to do so." *Satz*, 181 F.3d at 1279.  Much earlier in this case, Plaintiff was aware (or should have been aware) of the factual shortcomings of her Amended Complaint.  Last year, the court dismissed GE for many of the same reasons stated in this opinion.[14]  (*See* Docs. # 38, 39).  Plaintiff could have attempted to correct the mere "technical failures"[15] in her Amended Complaint in the time allotted under the Rule 16(b) order, but she did not do so.[16]

This next point is important.  Plaintiff has not filed a motion for leave to amend her pleadings.  Rather, in her opposition brief, she has asked that, in the event the court is inclined to find she has failed to state a claim, she be permitted to amend her complaint (again) to correct technicalities she says are curable by amendment.  Of course, as discussed in more detail below, that approach by Plaintiff runs afoul of Eleventh Circuit guidance. *See Long v. Satz*, 181 F.3d 1275, 1279-80 (11th Cir. 1999) (upholding denial of request to amend included in opposition brief, and observing that "[f]iling a motion is the proper method to request leave to amend a complaint")).

But even if Plaintiff's request were leniently construed as a motion for leave to amend (and this court has doubts that is a correct construction), it would be denied because she has not

---

[14] Moreover, at the Rule 16(b) Scheduling Conference, counsel for Service Experts mentioned that the court's dismissal of GE gave them reason to reassess the RICO counts alleged against them.  That the subject Motion was filed after Plaintiff's deadline to amend the complaint does not matter.

[15] To be clear, the court disagrees with Plaintiff's characterization of her pleading flaws. Mere "technicalities" are not the same as "factual contentions.  "  Plainly put, this is not a case where the pleadings have set forth facts that simply were not thoroughly or well-stated.  Plaintiff has not alleged *any* basis for amendment.

[16] Perhaps she did not for good reason: the strictures of Rule 11.

shown good cause.  Plaintiff's sole argument in support of leave to amend her pleadings is that Defendants' Motion raises "technicalities" which can be cured by amendment.  (Doc. # 54 at 22). The court disagrees.  In actuality, Defendants have pointed to Plaintiff's failure to plausibly allege facts that support the claims asserted in her *Amended* Complaint.

It is not lost on the court that, to date, the parties have engaged in substantial discovery. Yet, Plaintiff has not offered any new facts learned through that discovery which would warrant a finding of good cause to amend.  The Amended Complaint, which specifically added federal RICO claims, was filed in the state court before this case was removed—on August 25, *2014*. (Doc. # 1).  The court resolved Plaintiff's remand motion on June 22, 2015.  (Docs. # 22, 23). Shortly thereafter, GE moved to stay discovery pending the resolution of its motion to dismiss the claims against it (that is, Plaintiff's RICO claims).  (*See* Docs. # 1, 1-5, 1-6).  The court dismissed GE from this case on November 5, 2015, for failure to state a claim.  (Docs. # 38, 39). At the very latest, starting on that date, Plaintiff was aware that she had not plausibly alleged *facts* demonstrating a RICO cause of action. Despite that knowledge, she did not move to amend her Amended Complaint to correct any factual deficiencies.  Since November 2015, the parties have participated in discovery.  (*See* Doc. # 41).  Plaintiff has not argued (or in any other way suggested to the court) that she has uncovered previously unknown facts that would allow her to amend her pleadings and assert a plausible claim for relief (1) under RICO, and (2) against Freeman.  Accordingly, she has not shown good cause, and is not entitled to the "more liberal standard of Rule 15(a)."  *Dozier*, 397 F. Supp. 2d at 855.  Therefore, her alternative request for leave to amend is due to be denied.

Finally, and in any event, "[f]iling a motion is the proper method to request leave to amend a complaint."  *Satz*, 181 F.3d at 1279-80.  "It has long been established in this Circuit that

a district court does not abuse its discretion by denying a general and cursory request for leave to amend contained in an opposition brief." *Davidson v. Maraj*, 609 Fed. Appx. 994, 1002 (11th Cir. 2015) (*per curiam*).   "Where [as here] a request for leave to file an amended complaint simply is imbedded within an opposition memorandum, the issue has not been raised properly."[17] *Rosenberg v. Gould*, 554 F.3d 962, 967 (11th Cir. 2009) (quoting *Posner v. Essex Ins. Co.*, 178 F.3d 1209, 1222 (11th Cir. 1999)).   Plaintiff's request appears at the end of her opposition brief in a seemingly backstop effort to save her RICO claims (and her other claim against Freeman). Under Eleventh Circuit case law, her "request for leave to amend was insufficient as a matter of law." *Davidson*, 609 Fed. Appx. at 1002.   Plaintiff is not entitled to leave to amend.

## VI.   Conclusion

For all these reasons, Defendant's Motion (Doc. # 42) is due to be granted.   A separate order will be entered.

**DONE** and **ORDERED** this July 14, 2016.

**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE

---

[17] Furthermore, the request does not comply with the requirements for motions to amend set forth in this court's Scheduling Order.   (*See* Doc. # 41 at ¶ 8).   Similarly, Plaintiff "also failed to comply with Federal Rule of Civil Procedure 7(b) when [she] failed to attach a copy of [her] proposed amendment or to describe the substance of [her] proposed amendment."   *Rosenberg v. Gould*, 554 F.3d 962, 967 (11th Cir. 2009) (citing *Satz*, 181 F.3d at 1279-80).